Good morning. I am Nicholas Acedo. I'm arguing today on behalf of Corrections Corporation of America and Timothy Wengler. In the limited time that I have, I'd like to address two issues, the Coconan issue and the PLRA fees cap issue. And my goal is to reserve three minutes for rebuttal. Limited? You've got 15 minutes. There's other poor people in town. You've got a deal here. I'm very grateful for that. The Coconan issue. Federal district courts are courts of limited jurisdiction and possess only the power authorized by the Constitution or Congress. The parties in this case agreed to settle their dispute. And once that settlement agreement was finalized, the district court dismissed the case with prejudice, effectively terminating its jurisdiction. The district court's order of dismissal did not confer ancillary jurisdiction to either the district court or the settlement judge. Now, if we were to read the district court order as incorporating the settlement, does that then become judicially enforceable at a later time? I don't believe so, Your Honor. Why not? Well, I'll start with Coconan, which instructs to look at the four corners of the order of dismissal. And the order of dismissal doesn't mention the settlement agreement, nor does it expressly incorporate the terms of the settlement agreement. It only incorporates the stipulation to dismiss. Which in turn incorporates the settlement agreement. And I disagree with that respectfully, Your Honor. And again, going back to Coconan, if we were to go through the legal gymnastics connecting the dots of incorporation, I don't believe that Coconan allows for that. Coconan and its progeny require that the order of dismissal within the four corners are very expressed, very clear, and incorporate the terms of the settlement agreement in that order. So I do not believe that courts can incorporate one document, which in turn incorporates another document. Because then we end up before you all trying to argue this issue. It has to be clear. Coconan requires strict adherence, not substantial compliance. OK, so if this were brought as a contract case, would you agree that if the plaintiffs were convinced that you all had breached the settlement agreement, that they could then bring a lawsuit on a violation of the settlement agreement, which had been incorporated, whether or not we agree that it's been incorporated in the order of dismissal? I don't believe that a separate state law claim for breach of contract would have been appropriate. The terms of the settlement agreement… But why not? Because the terms of the settlement agreement require the parties to go through a three-step process if there is a dispute. One, they have to confer personally and try to resolve it on their own. If they can't resolve it on their own, they submit the dispute to the alternative dispute resolution coordinator. If he or she cannot resolve the issue, then at that point they submit it to the settlement judge, in this case Judge Carter. OK, so they get back in front of Judge Carter then. Correct. In this case, his capacity was purely as a settlement conference judge under Idaho Local Rule 16.4. His job was simply to supervise settlement negotiations. He wasn't the district court, Article III district court in this case. He was simply the settlement judge. OK, so he would have power to enforce the terms of the settlement agreement? He would, yes. He would resolve any dispute. …the kind of relief that has been ordered here by the district court? No, Your Honor. He would not be able to invoke Rule 70 and hold CCA or Wengler in contempt of court. No, I'm not saying that they would hold him. He could give them specific performance. He could give them damages. Sure. He could give them contract remedies. Sure, yes. And that was the process the parties were supposed to file. But what happened instead is that plaintiff's counsel filed this motion for order to show cause, tried to get it back in front of Judge Lodge, who was the district court. And Judge Lodge rightly recognized that this doesn't concern him. There was a bargain for provision that it would go in front of Judge Carter, the settlement judge, not in front of him and that he did not have ancillary jurisdiction. I'd like to get back to your point, Judge Flesher, about whether or not the order incorporates the stipulation to dismiss. It does say in the order that it incorporates the stipulation to dismiss. But if you look at the stipulation to dismiss, it only states that the parties, quote, stipulate and agree that an order shall be entered dismissing the case with prejudice pursuant to the settlement agreement attached as Exhibit A, which is hereby incorporated by the court. Now, liberally construed, that can only be interpreted to be incorporating the stipulation, asking the court to incorporate the stipulation, not asking the court to incorporate either the settlement agreement or the terms of the settlement agreement. You might have to say I just disagree. I just don't read it that way. Let me try to convince you, and I think there's two reasons why. One, the last clause, which is hereby incorporated by the court. Now, that's in the third-person form. If the parties had intended to agree to an order where the district court would incorporate the settlement agreement, it would say, which is hereby incorporated as requested by the parties. It doesn't. It switches to the third person, which, frankly, is nonsensical. So who is it being incorporated by? Well, it gets to my second point, which the most you can read out of this is that the parties were asking the court to incorporate the stipulation, not incorporating the previous pursuant to the settlement agreement, but incorporating the stipulation, which, and this is proof positive, in my opinion, is that if you look at the order, the district court only incorporated the stipulation to dismiss. He could have said, like this court recently did in the Torkelson case just last year, he could have said it is hereby ordered dismissing this case with prejudice, pursuant to the settlement agreement between the parties, the terms of which are expressly incorporated herein. Now, that complies with Kokanen, and that should be the standard, and that was upheld in Torkelson, but that's not what we have here. Another example is the O'Connor case. So I just want to understand the grammatic construction you're putting on this. It's clear that this document, the stipulation, is not signed by the court. So which is hereby, which comma, exhibit A comma, which is hereby, you're saying normally that would refer to exhibit A. Do you think the which refers to exhibit A? No, Your Honor. What does it refer to? It goes all the way back to the stipulation. So all of this intervening language parties to the stipulation, which is hereby incorporated by the court. That's what you would read it? Yes, that was intended to incorporate the first clause, that the parties agree to stipulate to dismiss the case with prejudice. And that's what Judge Lodge did, the district court did in his order. He just dismissed the case with prejudice, pursuant to the stipulation, not pursuant to the settlement agreement. If the parties had wanted to incorporate the terms of the settlement agreement, that stipulation Let me just give you my reaction. I think your grammatical construction is a leap. But my problem is, which is hereby incorporated by the court, seems to be referring to a document other than the one here, or it was just mislabeled if it said incorporated by the parties to this agreement or whatever. So if it had said which is... Ambiguous, that's for sure. That's correct, Your Honor. It is ambiguous. And coconin requires more. It requires explicitness. It requires clear language. And there's a lot more that should have been done if the parties wanted this to be a consent decree. And this was never intended to be a consent decree. This was purely a settlement agreement. And if you look at the settlement agreement itself, it's not a consent decree. If the parties wanted to incorporate the terms of the settlement agreement in the stipulation, they would have said, pursuant to the settlement agreement, which is hereby incorporated by the parties to this stipulation. That would have incorporated the settlement agreement to the stipulation. And then at least you've got a chain. Do we know who drafted this language? Well, it was a back and forth. Initially, counsel for CCA submitted a proposal that did not have any of this language. And I don't believe this is in the record, Your Honor. And Mr. Pevar can attest to this. It was sent to Mr. Pevar, and he is the one that added this language at the end, and the parties had submitted it as such. Now, if that had said, which is incorporated by the parties referring to the settlement agreement, this case would not have been settled. And if the proposed form of order of dismissal had said, I dismiss this case with prejudice and hereby incorporate the terms of the settlement agreement, we would not have agreed to that. We would not. And really what it appears is what plaintiffs had done is they peppered in what they thought was enough to try to get it to try to turn it into a consent decree. But as I said before, Coconut... Because Judge Carter signs off on this, and Judge Carter, who signs this, whether he drafted it or not, Judge Carter interprets it to give him continuing jurisdiction. Signs what, Your Honor? Judge Carter signs off on the original order. Is this correct? No. Judge Lodge. Judge Lodge signed the order of dismissal, and that's the disconnect. I mean, we've got – Judge Carter is a judge. He's a federal district judge, but in this capacity he was... We're familiar with that. Yes. But in this case... We know both Judge Lodge and Judge Carter. In this case, he wasn't the district court, so he was doing his thing with the parties, and the parties agreed to use him as the arbiter, the mediator, if there was disputes. But it went in front of Judge Lodge, who he didn't supervise the negotiations, and in the order he doesn't mention the settlement agreement or either expressly incorporate the terms of the settlement agreement or expressly retain jurisdiction. So under Coconut we look at that order, and nothing is in that order to confer ancillary jurisdiction. And jurisdiction isn't something that should be inferred lightly. The consequences of this are very drastic. Finding a party in contempt of a court order has very significant legal consequences. This is not criminal contempt. This is not punishment. This is coercive contempt. Well, it's contempt nonetheless. Coercive contempt, but it's civil contempt. Well, it's our position, as we argued in the brief, that this was really... I disagree with you on that too. But we don't even need to get to that if we find that the district court didn't have ancillary jurisdiction. And it appears that somewhere along the way, Judge Carter decided to transform into the district court and gave himself jurisdiction where none existed. He is a district court judge, and he can sit in any district in the country as long as proper paperwork is filed and so on. So it's not like he's some officious intermeddler or interloper who doesn't have the power of the district court. Well, but he wasn't the Article III judge in this case. It doesn't matter. Well, I think it does matter, respectfully. Why? Well, because the District of Idaho only had federal question jurisdiction up until the point when the case was dismissed. When that order was filed, jurisdiction went away. The only way it could be revived is if it had ancillary jurisdiction. And the only way it could have ancillary jurisdiction is if that order complied with Cochran's. So are you saying Lodge could have done it, but Carter couldn't? Or are you saying neither one of them could? Neither one of them. I would like at some point to have a little bit on attorney's fees. I don't want to force still. But I'm interested in the question, well, I'm interested in what you think of the notion that a multiplier can be imposed in a PLRA case. It cannot. That's our position. Well, if you look at the, again, we look at the text of the statute, 1997 ED, and that states that, quote, fees shall not be awarded under Section 1988 in a prisoner litigation case, quote, except to the extent authorized in that statute. So if you look at Martin v. Haddox and Webb v. Attic County, those cases very clearly say that when it's a case brought by a prisoner, when it's a prisoner case, you don't look to the lodestar method in calculating the fee. The PLRA in 1997 ED supplants that. You only can award fees in accordance with that statute, and both Maddox and Webb are very clear on that. Are those Ninth Circuit cases? Martin v. Haddox is a United States Supreme Court case, and Webb v. Attic County is a Ninth Circuit case. I see none of those cases at that level telling us about whether a lodestar can be used and what based on means. Well, Webb v. Attic County, I'll direct your attention to footnote 6. That says pre-PLRA conduct is addressed under the lodestar method. Post-PLRA conduct is, quote, dictated by the PLRA. So to me that's very clear that you don't even go to lodestar because, again, the lodestar was a judicial remedy that was supposed to fill the gap. We're not going to lodestar. We're calculating what would have been the lodestar under the PLRA with PLRA rates and regulations. Then we are adding a multiplier. So where does it say that although the fee is based on PLRA, it is then multiplied as one can do under 1988 and other things? And my other question about it, since we only have 50 seconds left, is Judge Carter used a couple of rationales. There are more, and I'm wondering if this court could affirm on other grounds  or if he could impose it at all. If I knew what those grounds were, I'd like to argue about it with you. But I will say that in this context, the request for fees was brought only pursuant to Section 1988, and the fees were only awarded under Section 1988. And under 1997 ED, you don't calculate those using the lodestar. You calculate those using the statute, and the statute says you cannot use an hourly rate greater than 150% of the CJA. Well, the question is what based on means. Assume for purposes of argument, and of course I'm not asking you to concede, assume that in certain circumstances a multiplier can be used consistent with PLRA. What grounds would allow that? I don't think there's any grounds to allow that. In other words, you're disagreeing with my premise. That's correct, Your Honor. Except my premise for the moment. Are there any grounds, or what are they, that would allow the multiplier to be used? Well, the statute does build in a multiplier. The base rate is the CJA rate. But you're not rejecting the premise. I don't have an argument, Your Honor. I don't have an argument in favor of a multiplier. So you're saying that there simply is no possibility of a multiplier, and you're not willing to address the question if there were a multiplier, what would be grounds that would allow it? Pretend it's a 1988 case and tell us why we couldn't have imposed a multiplier in a 1988 case. If this were a 1988 case, and my position is rejected that the hourly rate cap doesn't apply, you could have a multiplier. And what would be the grounds for it? What would be permissible grounds? Well, I think under Perdue and Kerr they list what the grounds are. In this case, the settlement judge said that there was exceptional results, which we disagree with in the brief. And the second basis was that awarding a higher rate would attract more counsel to take these cases on, which again in our brief we've argued that neither Perdue or Kerr allow for that. And actually if you look at the intent of Section 1988, it runs counter to that. If you look at the intent of the PLRA, it runs counter to that. Both the PLRA and 1988, well the PLRA is intended to weed out frivolous lawsuits, discourage inmate lawsuits. Go back to the exceptional results. You say, well, these were not exceptional results. But in the abstract, would exceptional results be a sufficient basis to apply a multiplier? In the abstract. In the abstract. Yes, Your Honor. It's just you're saying in this case there were no exceptional results. That's correct. I mean they've essentially proved, the judge found what CCA had offered before this even got started. It was a two-day evidentiary hearing with a month of discovery. There was only a few papers filed. This was by no stretch of the imagination a trial, much less a six- or seven-week trial. And they got what they asked for. They didn't exceed what they asked for. They asked for contempt finding, and that's what they got. So multipliers in the 1988 context in the low-star method are reserved for very exceptional circumstances, and this simply doesn't warrant one. Okay. Now we've taken you over. Let's hear from the other side. Sure. But we'll give you two minutes to respond. Thank you. Good morning. Good morning. May it please the Court. My name is Stephen Pevar, and I'm counsel for the prisoners. Given that CCA has limited their argument to two issues, I'll do likewise, and I'll pick up where he left off on the multiplier issue and then turn to whether the settlement agreement is a court order. CCA is asking this Court to rule that the PLRA bars multipliers, even though there is nothing in the PLRA that expressly does that. Their request is contrary to how the United States Supreme Court and the Ninth Circuit have viewed these kinds of cases, and there are six relevant cases, three decided by the United States Supreme Court and three decided by the Ninth Circuit. In those six cases, the three Supreme Court cases are Porter, Jones, and Martin, the Ninth Circuit, Perez, Dannenberg, and Woods, and what those six cases establish are the following two principles. First, the PLRA definitely was designed to curtail and restrict prisoner litigation. As the Court said in Porter and as the Ninth Circuit has reiterated from Porter, the purpose was, quote, to reduce the quantity and improve the quality of prisoner suits. It's a very harsh, draconian statute. However, because of that, we have the second principle, and that principle is given how drastic the PLRA is, no additional restrictions will be read into it. You will presume, and this is what the Ninth Circuit has held in at least three cases, you will presume that Congress took its time, as it clearly did, to establish the PLRA, and it means what it says, and it meant what is in there. Therefore, again, as the Ninth Circuit has repeatedly ruled, if you have a situation that is not expressly covered by the PLRA, you must then apply the legal principles that were in effect at the time. Under the assumption that Congress knew what those principles were and decided not to change them. These two principles that I just mentioned are illustrated in two unanimous Supreme Court cases, Porter v. Nussel, 2002, and Jones v. Bach, five years later. In Porter, the unanimous court held that the exhaustion requirement means exhaustion, even as applied to a prisoner who was not seeking institutional reform, but was seeking damages based on one incident of excessive force. In contrast, in Jones, five years later, a unanimous Supreme Court considered whether the PLRA imposed additional burdens on prisoners in their pleading requirements, and Chief Justice Roberts, writing for the court, held that because the PLRA was silent on that subject, we must presume that Congress knew what it meant, knew what the law was, and made a deliberate decision not to change the law. And I'd like to just quote one portion from it. The court explained that congressional silence, quote, is strong evidence that the usual practice should be followed, end quote, particularly where, as here, the PLRA addresses a subject in some detail and does not change the existing law with respect to the issue at hand. The third Supreme Court case that fully buttresses plaintiff's position on this is one that, fortunately, CCA cited in their brief and criticized us for not citing, Martin v. Haddox, and we clearly should have cited that case. It is four square on our side. The issue in Martin, decided not long after the passage of the PLRA, was whether or not the attorney fee provisions, this was an attorney fee case, would be applicable to cases that had been filed prior to the passage of the PLRA. The court looked at the PLRA, found that although there were numerous passages regarding attorney's fees, there was none expressly addressing the subject. And therefore, the court relied on the existing law to determine whether or not there should be retroactivity. And Justice O'Connor said the existing law is that in retroactivity cases that there has to be fair notice. So what the court did is to say, someone could get fees for time spent up until the passage of the Act based on market rates and after passage based on the PLRA cap. The Ninth Circuit has decided at least three PLRA silence cases where issues have arisen regarding some aspect of the PLRA where the Act itself is silent as to what Congress intended. And in all three of those cases, again, Perez, Dannenberg, and Woods, the Ninth Circuit said that we will not interpret, and we should not interpret, this harsh statute to be even harsher where Congress has not said it should be. I'm going to circuit this by a little bit and just cut to one of the arguments that ends up at the very end of the analytic chain. And that is, assuming that a multiplier is permitted, what are the available grounds for such a multiplier? Your adversary has stated that exceptional results is an acceptable ground but has contended that the desire to attract lawyers is not. Could you respond to that second one? That is to say that it's not a permissible ground for applying a multiplier that you want to attract talented lawyers because they don't like to work for free or for cheap. There's no case that holds that. And the Ninth Circuit was one of the first courts to adopt the rule under Section 1988 that is permissible. You have to remember that 1988 was passed as remedial legislation by Congress in the wake of the Alyeska Pipeline case in which the Supreme Court said that you could not award fees under a private attorney general theory. And Congress quickly changed that less than a year later and states in the Senate report that one reason that we're making these fees available is like the carrot dangling out there on the stick. But as I understand the implicit basis for your adversary's argument is not going back to Alyeska and then 1988 and so on but rather that somehow the PLRA, because it has imposed a cap, has told us that we are going to limit, at least to some degree, that idea of we need to pay more to attract good lawyers because there's a cap. I assume that's the underlying premise for his argument. The short answer is that you will only get fees if you win. If the purpose of the PLRA is to reduce the quantity... We're talking about the size of the multiplier. First off, he says no multiplier allowed whatsoever, but when pressed, asked to assume for purposes of argument that there is such a multiplier, he says it would be an impermissible ground to use a multiplier that we're trying to attract lawyers who are willing to do the work because the premise of the PLRA is to limit fees because we want to limit the number of lawyers who are willing to take these cases. And again, Your Honor, what the courts have said, including the Ninth Circuit and in Porter, that the purpose was not to discourage meritorious cases and therefore by holding out the prospect of a multiplier in those rare and exceptional instances in which a district court finds that the factors warrant it, then... It would have to be rare and exceptional. And to the extent that Congress has made a judgment that what used to be the lodestar is capped at a rate that is clearly going to squeeze counsel's ability to count on remuneration for their efforts, if you then use the enhancement, if you will, to basically bring it back up in a routine fashion, certainly in a routine fashion, you'd basically be totally gutting PLRA, wouldn't you? In other words, if most lawyers, I don't know, most, but if the rule was that if you take this case and you get a good result, you'll get an enhancement, which will bring you very close to what you could have gotten under the lodestar method with enhancements. Market rates. Basically, you'll get market rates, and that seemed to be what was going on here. And so if that's the case, then the whole purpose of PLRA has been undermined, as harsh as it was. That safety valve would seem to sort of be at odds with what Congress intended. Two responses. One is that it's not inconsistent with what Congress intended. Congress did not intend to thwart meritorious cases. No, but I'm not saying, I'm just dealing, let's assume that there can be an enhancement for exceptional performance, but it would have to be pretty exceptional, would it not? Otherwise, if it's winning, getting a favorable result, that might basically say if you win, you're going to get your market rate. And the second part was the point that you just made, that under Purdue, and prior cases, it's a blum also, a multiplier is a rare occurrence. So what were the facts here that justified an exceptional performance multiplier? Those outlined in Judge Carter's decision, including the success, the amount of the shortened time that we had. I took depositions in Tennessee, South Dakota, and Idaho during a 26-day period. We read close to 10,000 documents. We prepared six or seven depositions. And it was a David versus Gol- Is that true in prison litigation? I'm sorry? You're saying that's exceptional in normal prisoner litigation? It's exceptional in any litigation. I've never, I've been practicing law for almost 40 years. I did too. I'm sorry? It sounds like a normal day. I'm giving you credit for what you did. I'm just trying to test what the escape hatch is. First of all, what the Ninth Circuit said in the Harmon case is that this is an abuse of discretion standard. The Ninth Circuit would have to find that Judge Carter's decision was simply indefensible. I mean, he not only participated in the creation of the settlement agreement, but the- I've got your point. You're running out of time, and I think there's concern about getting to the jurisdictions since apparently you had a hand in drafting the paperwork. I have one more on the attorney's fees, if you don't mind. Listen, we're going to go as long as we need to talk, so let everybody just- Okay. We'll ask and you answer. Keep going. Thank you, Your Honor. This isn't my real question, but with respect to the not discouraging lawyers factor, could one not argue that one, to award fees under that provision, one would have to not just say in general we shouldn't discourage lawyers, but should say in this particular jurisdiction for this type of a case, this sort of multiplier would have been necessary to attract a lawyer willing to take it. And that's what Judge Carter did say. And then my real question is, are there any other factors besides the two that Judge Carter used that you could envision could have been used to justify a multiplier, and if so, could those be used now as alternative grounds for affirming? I only know of those two grounds that the Ninth Circuit has used, and Judge Carter relied on both Supreme Court and Ninth Circuit cases. In the 35 seconds we've got left- Address federal jurisdiction. That's a tease that we've only got that amount. But could you address the question as to whether or not there is appropriate ancillary jurisdiction under Covenant? Yes. The settlement agreement is a court order because CCA expressly stipulated that it should become a court order. And that is clear from the three documents that comprise the party's settlement. First, chronologically, we have the settlement agreement, ER 642. It's four pages long. Every one signature is on it, including Judge Carter's, on September 16th. Four days later, as counsel mentioned, we were swapping back and forth the stipulation for dismissal, and finally everyone signed it. And that is just one paragraph long, and it says in clear language that the case is being dismissed with prejudice, quote, pursuant to the settlement agreement attached as Exhibit A. And I want to emphasize attached as Exhibit A, which is hereby incorporated by the court. Now, I will acknowledge that the parties can't technically incorporate something on behalf of the court, but there isn't any way to read this without understanding that the parties were evidencing their intention that this agreement was going to be incorporated by the court. It has only been when CCA is now accused of violating the agreement that they're saying this doesn't mean what it clearly indicates it means. All right. So the settlement agreement then was attached to the stipulation. So what you're saying is that clause incorporated by the court, the language the court was intentional and understand by all parties that it would be, this was going to be incorporated by the court. It was future-looking language. I'm not saying that I know what their intentions are. All I do know is I know what they signed, and I know the language. As Mr. Aceto indicated, it was going back and forth, and I was the one who sent it back to Mr. Naylor saying, we discussed during the settlement that this was going to be incorporated by the court. Let's put that language in there, and they agreed to put that language in there, and that's what it says, incorporated by the court. I don't see how anyone could reasonably interpret that any other way than what it says. All right. So the stipulation then with the settlement agreement attached to it, and we have briefed the fact that under both federal and Idaho law, as soon as you attach a document to another document, the two become one. They are merged. So even if you have any doubt whatsoever as to what the parties meant by incorporated by the court, there is a totally separate basis on which to acknowledge that this is a court order because it was attached. The parties agreed that it would be attached to the stipulation, and then the stipulation would be given. The moment it was attached, it became part of the stipulation, and as soon as Judge Lodge, which is the third document, we submitted it to him that very same day, as soon as he incorporated the stipulation, he incorporated the settlement agreement. They were one at that point. They were attached to one another. So there's a direct chain of events. This isn't confusing, and they said that there's all kinds of settlement agreement is incorporated by the stipulation. Stipulation is incorporated by the order of dismissal. I think we got it. After 46 hours of settlement conferences over three days with Judge Carter, anybody might have been. And to midnight at times. Sign it. I'll sign it. Where do I sign? Get me out of here. If I could have just 15 more seconds. Here there are two grounds for Kokonan because Kokonan has an alternative process, and frankly, I made sure that both were in there. And the other one is that Kokonan says that ancillary jurisdiction becomes available when the jurisdiction is retained. And I was also the one to make sure that that language was in there, saying that any disputes regarding compliance would go to Judge Carter in his capacity as a federal district court judge. And both Judge Lodge and Judge Carter has interpreted exactly that, and they're the ones who would know. Okay. Thank you very much. Let's put two minutes on the clock. Five points. The first, to address your question, what does based on mean? Well, in Martin v. Haddox, they refer to it as a fees cap. In Webb v. Atta County, they refer to it as a fees cap. In Martin, they refer to it as the maximum hourly rate. In Perez v. Cate, this court said the PLRA does not authorize. For me, I think you're, at least as I'm hearing you, you're focusing on the hourly rate. Okay. Under the system of Lodestar, you set an hourly rate. You get there by inputs and whatever. And then once you've got the rate, the hourly rate, then you look as to whether there are any enhancements. And your argument is the PLRA, by setting forth the formula, that the rate shall be the CJA rate times 150% thereof. That wiped out the enhancement, even though that really was addressing, could be read as only addressing the Lodestar. You're saying it's supplanted the Lodestar. Well, that just means that you don't go through the market rate analysis. What you do is you say, okay, the fee is going to be 150% of what the CJA rate is. For me, you're begging the question about the enhancements. The whole purpose of a multiplier, first of all, it's a cog in the Lodestar framework. What a reasonable market rate is in the Lodestar framework, anyone can figure that out. That just establishes what a presumptively reasonable fee is. And then you bring in the multiplier to increase it or decrease it. And our position is that you don't even get to step one. You don't start with the Lodestar. You start with 1997 ED. The Lodestar doesn't have any part in this. And Martin v. Haddock says that, and Webb v. Atta County says that. We don't look at the Lodestar.  So your view is the exceptional circumstances is part of setting the Lodestar. No, our view is that you don't even get to exceptional circumstance. No, I'm saying under the absent PRLA, you're saying in fixing the Lodestar fee, you would also consider at that point exceptional circumstances and other purdue factors. Is that what you're saying? Right, if the Lodestar does apply, which we don't think it does, but if it does apply, then? Bear with me. Assume that there are two baskets here in setting a fee. Maybe I'm misunderstanding the law. But the first basket is to set the hourly rate. And you need to decide what a fair rate in Seattle would be to handle a civil rights case, for example. And you bring in affidavits and say normal attorneys would bill these rates. The PRLA takes that away and says, okay, the rate you're going to get as a base is set and is defined by CGA plus 50%. I'm envisioning basket two is, okay, now you've got what an average attorney would get as an hourly rate. Is there anything about this case that warrants a multiplier? I've been calling it an enhancement. One multiplier would be exceptional results. You could have hired anybody, but this particular attorney went the extra mile and got exceptional results. That's a multiplier. Do you agree with that? Yes. Okay, so where in the PRLA does it rule out that once you accept the CGA plus 50%, you can't then take the next step and say there were exceptional circumstances here that warrant a multiplier, as Judge Carter did. Well, at the risk of going down the wrong road, it doesn't need to rule it out, Your Honor, because it was never there in the first place. They brought in a case that talked about the— Where does the PRLA rule out the normal process of multiplier? What language? Well, Section D-1. In any action brought by a prisoner who is confined to any jail, prison, et cetera, in which attorney's fees are authorized under 1988 of this title, such fees shall not be awarded, except to the extent that. That phrase is what takes Lodestar off the table, in our opinion. Lodestar. Right. Basket one. Yes. Okay. What about basket two? Well, there still is no multiplier built into the statute, but it doesn't need to build it in because Congress said the most you can do is 150% multiplier. That's it. Okay. I see where we're getting. Okay. You had five points. You just made one. Do you want to do the other four quickly? I'll make one more, and that's back to Kokanen. Plaintiff's counsel sat up here and essentially acknowledged that the stipulation was ambiguous, that it's not clear. I don't think he acknowledged that at all. I think he said it was very clear. Well, he said that, but he's backing down. He didn't know what you thought. He said if there's any doubt. He said what I heard was that reasonable minds can at least differ. He didn't say that either. He said he doesn't know what you thought. Well, if he doesn't know what we thought. He didn't say whether he thought you were reasonable or not. Right, and he couldn't get up here and say, you know what, they did agree to a consent decree. We talked about that, and now they're trying to go back on it. No, no, that's not how it works in contracts. Right. Well, I'll go back to Kokanen, and my final point is that it has to be explicit and it has to be clear, and if it's not clear like the Hagestad case where the court itself believed that it retained jurisdiction, the parties believed through the transcripts and other orders, everyone thought that it would retain jurisdiction, but this court said it's not good enough under Kokanen because that intention, that belief is not in the four corners of the order of dismissal. The settlement agreement contemplated that David Carter would enforce the agreement. He should have the authority to enforce the terms of this agreement in his capacity as a federal district judge. What do we infer from that? Well, we can infer that as a federal judge, not as a settlement judge, but as a sitting federal district judge. There's three responses to that, Your Honor. It can't create federal jurisdiction, but it does establish, does it not, that they wanted him to be functioning as a federal district judge, not as a mediator, not as an arbitrator. What it doesn't establish is that it doesn't explicitly say that the district court was going to retain jurisdiction. Got it. When you read subsection C with A and B, it's part of a process. So they might have called him a federal district judge, or he could enforce in his capacity, but you have to construe it with all three parts. And even if the parties did agree to that, parties can't stipulate to jurisdiction. I just said that. I acknowledge that. Right. And the only way that that would convert into ancillary jurisdiction is if it made its way into the order of dismissal, which we get back to in the four corners, it's not there. Okay. Good. Thank both sides for your helpful arguments. Kelly v. Wengler & Correction Corporation of America, now submitted for decision. And that concludes our argument for this morning.
judges: Wilken, Fletcher, Fisher